UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| WALTER HOWARD WHITE,<br><br>                              Petitioner,<br><br>vs.<br><br>DERRAL G. ADAMS, Warden,<br><br>                              Respondent. | Civil No.        07-0749-WQH (WMC)<br><br>**ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION AND PROCEDURAL BACKGROUND**

Walter Howard White ("White"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus in the Northern District of California on August 22, 2006, which was transferred to the Eastern District of California (Fresno Division) on May 22, 2007 [doc. nos. 1 & 5]. On November 25, 2008, the Petition was reassigned to visiting District Judge Janis L Sammartino for all further proceedings [doc. no. 24] and, on December 30, 2008, it was again reassigned to visiting District Judge William Q. Hayes [doc. no. 26].

White is serving a prison sentence of 20 years and four months after being convicted by jury of car jacking, robbery, assault, false imprisonment, making threats, and unlawfully taking a vehicle, plus sentence enhancements. (Respondent's Answer [doc. no. 17] (hereinafter, "Answer"), Exh. 1, "Abstract of Judgment.") White's Petition, brought pursuant to 28 U.S.C. § 2254, does not challenge

1    the legality of his conviction or sentence, but instead alleges that he was denied due process in

2    conjunction with a prison disciplinary hearing. (Pet. [doc. no. 5] at 6.)[1] White contends that his due

3    process rights were violated when: (1) prison staff failed to determine the reliability and truthfulness

4    of a confidential informant who testified against him, (2) he was denied the right to call witnesses or

5    an investigative employee at his prison disciplinary hearing, and (3) prison officials failed to allow him

6    to raise facts on appeal through the inmate appeals process. (*See* Answer, Ex. 6.) [2]

7        On August 1, 2004, the California Department of Corrections ("CDC") delivered to White a

8    copy of a Rules Violation Report ("RVR"), pertaining to a July 22, 2004 incident in which White was

9    charged with possession of inmate-manufactured weapons. (*See* Answer, Ex. 2 at RVR p. 1 of 4.)[3]

10   On August 23, 2004, White participated in a disciplinary hearing on the charge alleged in the RVR.

11   (*Id*. at RVR pp. 2-4 of 4.) The Senior Hearing Officer, Correctional Lieutenant G. Biaggini ("SHO"),

12   found White guilty of the charge and assessed a 360-day forfeiture of behavioral ("good time") credits.

13   (*Id*. at p. 1 of 4.) On November 4, 2004 and as the result of a separate evaluation, White was assessed

14   nine (9) months confined time is the Segregated Housing Unit ("SHU"). (*See* Answer, Ex. 6 at petition

15   to California Court of Appeal, Ex. C, "SHU Term Assessment Worksheet.")

16        White filed a petition for writ of habeas corpus in the state superior court challenging the

17   administrative decision, among other claims. (*See* Answer, Ex. 3.) The superior court denied the

18   petition on November 28, 2005 in a reasoned order. (*Id*.) White then filed a habeas petition in the

19   appellate court, which was denied on March 3, 2006 without comment or citation to authority.

20   (Answer, Exs. 4 & 5.) Thereafter, White filed a habeas petition in the California Supreme Court,

21

22

23        [1]On the Petition form [doc. no. 5], White instructs the reader to "please see attached Petition," presumably for additional details regarding the claim(s) raised. (Pet. at 6.) However, there are no further pages attached to the Petition form or otherwise reflected on the Court's docket. (*See* Petition, generally.) White goes on to state that the "same grounds were presented to lower state courts" (Pet. at 6), and this Court presumes that the substance of White's claims are contained in his Petition for Writ of Habeas Corpus (styled as "Petition for Review") filed in the California Supreme Court on March 13, 2006 and attached by Respondent to the Answer. (Answer, Ex. 6.)

26

27        [2]White incorporated his petition for writ of habeas corpus filed in the California Court of Appeal as part of his habeas petition to the California Supreme Court. (*See* Answer, Exs. 4 & 6.)

28        [3]Because the pages of the Exhibits to Respondent's Answer are not bate-stamped or numbered on the docket, the Court will narratively describe the referenced documents within each Exhibit, where appropriate.

07cv0749

1  incorporating the claims raised in his petition to the appellate court, which the supreme court denied

2  on May 10, 2006 without comment or citation to authority.  (Answer, Exs. 6 & 7.)

3         White originally filed the Petition in this case on August 22, 2006 [doc. no. 5].  After the

4  transfers and reassignments referenced above, Respondent filed an Answer, Memorandum of Points

5  and Authorities, and accompanying Exhibits in support of the Answer on June 9, 2008 [doc. no.17].

6  White filed a Traverse on October 29, 2008 [doc. no. 23].  The Court has now considered the Petition,

7  Answer, Traverse, and all the supporting documents submitted by the parties.  Based upon the

8  documents and evidence presented in this case, and for the reasons set forth below, the Court **DENIES**

9  the Petition.

10  **II.     THE DISCIPLINARY PROCEEDINGS AGAINST WHITE**

11         On July 22, 2004, while White was housed at Salinas Valley State Prison ("SVSP"),

12  Correctional Lieutenant C. Donnahoe completed a Crime/Incident Report containing the following

13  information:

> [¶] On 7-22-04 at approximately 1130 hours, confidential information was received by staff indicating where two inmate manufactured weapons were located and retrieved. The weapons were made of rigid metal and were taped together. [White's cell mate] Inmate Snow was placed in handcuffs and escorted to holding cell #1.  Inmate White was located at his job assignment, placed in handcuffs and escorted to holding cell #4. Both inmates were subsequently re-housed in Administrative Segregation.

18  (Answer, Ex. 2 at Crime/Incident Report, Part A1-Supplement, p. 2 of 2.)  An RVR was issued and

19  contained the following additional statement:

> [¶] ... The information provided by the source(s) is deemed reliable as part of the information has proven to be true, (Recovery of 2 weapons from cell 149).  The exact information provided by the source(s) cannot be revealed, as this would possibly disclose the identity of the source(s).  The identity of the source(s) must be kept confidential, as to do otherwise would place the source(s) in jeopardy, and jeopardize the safety and security of the institution, it's staff and Inmates. ...

24  (Answer, Ex. 2 at RVR p. 1 of 4.)[4]

25  //

26  _____

27  [4]While the incident was referred to the Monterey County District Attorney's Office ("D.A.") for a possible criminal prosecution, on August 13, 2004, the D.A. declined to prosecute the matter.
28  (Answer, Ex. 2 at RVR pp. 2-3 of 4.)

3

1    On August 2, 2004, at White's request, Correctional Officer ("CO") R. Monroy was assigned

2  as an Investigative Employee.  (Answer, Exh. 2 at Serious Rules Violation Report.)  CO Monroy

3  informed White that his duties "were as a fact finder for the Senior Hearing Officer.  Inmate White

4  stated that he had no objection to [his] serving in this capacity."  (*Id*.)  CO Monroy made the following

5  additional findings as part of his investigation:

6    [¶] <u>DEFENDANT'S STATEMENT</u>: Inmate WHITE (P-76559) made the following
     statement: "I have no knowledge of that stuff.  I want a polygraph examination as soon
7    as possible to clear my innocence and I'm going to send my signed statement to my
     attorney so he can send it in to the proper authority's [sic], being
8    SVSP/Sacramento/FBI."

9    [¶] <u>REPORTING EMPLOYEE'S STATEMENT</u>: Correctional Officer S. Nunez made
     the following statement: "On 7-22-04, I received confidential information stating there
10   were two weapons in cell 149.  I retrieved the weapons and notified appropriate staff.
     . . . "
11
     [¶] <u>INMATE WITNESS' STATEMENT</u>: Inmate SNOW (P-14303) made the
12   following statement: "Inmate WHITE had brung in an Inmate Manufactured weapon
     on the 21st, only after returning from work.  I was unsure what it was so I searched his
13   property the following day around 1100, I found it in the bottom locker, left hand side
     in some paper work in an envelope.  I turned it in to Officer Nunez when he came
14   around for count.  I was then handcuffed and taken to a holding cage."

15   [¶] <u>INVESTIGATIVE EMPLOYEE'S STATEMENT</u>: Correctional Officer R. Monroy
     made the following statement: "Inmate WHITE denies the weapons were his, while
16   Inmate SNOW claims Inmate WHITE had taken the weapons from work and put them
     in A4 cell 149."
17

18  (*Id.*)  A copy of the Serious Rules Violation Report was given to White on August 1, 2004.  (*Id.*)

19    After a postponement at White's request, on August 23, 2004, the SHO conducted a hearing

20  on the RVR.  (*See, generally,* Answer, Ex. 2 at RVR.)  White was present at the hearing, and he

21  acknowledged receiving copies of the RVR, the Crime/Incident Report, the I.E. Report (Serious Rules

22  Violation Report) by CO Monroy, and the CDC-1030 (Confidential Information Disclosure Form)

23  more than 24 hours prior to the hearing.  (*Id*. at p. 2 of 4.)  White stated that his health was good.  (*Id*.)

24  Because White was a participant in the Mental Health Services Delivery System, the SHO  noted that

25  he "did not demonstrate any strange, bizarre, or irrational behavior," and a Staff Assistant was not

26  assigned to assist him because White "read the RVR aloud and was able to demonstrate his

27  understanding of the RVR and the disciplinary process through discussion with the SHO."  (*Id*.)

28  //

07cv0749

1    At the time of the hearing, White pled "not guilty" and stated:

2        I had no knowledge of the weapons.  I was at work when the weapons were found.
         The report does not state what area the weapons were found in the cell.  Were they in
3        a common area or in someone's property?  I still want a polygraph exam, I did nothing.

4    (Answer, Ex. 2 at RVR p. 3 of 4.)  The RVR states that "Inmate White did not request any witness(es)

5    to be present at the hearing.  No witnesses were called as SHO's witness."  (*Id.*)  With regard to the

6    confidential information on which the RVR was partly based, the SHO stated:

7        ... This SHO reviewed the information contained in the Confidential Memorandum that
         was located in the inmate's Central File and find that it's [sic] overall credibility is
8        supported by other factors.  Here, the source has previously provided confidential
         information which has proven to be true and incriminated himself in a criminal activity
9        at the time of providing the information in regards to the current RVR, which leaves this
         SHO no other alternatives but to conclude[] that the information provided and the
10       credibility of the source were established in accordance [with the requirements of the
         California Code of Regulations].

11

12   (*Id.*)

13       White was found guilty of possession of inmate-manufactured weapons based on the following

14   evidence: (a) CO Nunez's written eyewitness statement that he received confidential information and

15   then retrieved two weapons from White's cell; (b) information contained in the Confidential

16   Memorandum that White was positively identified by a reliable source as having inmate manufactured

17   weapons hidden in his cell (and the credibility determination regarding that confidential source,

18   referenced above); and (c) the information contained in the I.E. Report (Serious Rules Violation

19   Report) by CO Monroy (set out above).  (Answer, Ex. 2 at RVR pp. 3-4 of 4.)  According to the

20   record, the SHO advised White of his right to appeal the findings of the hearing and the methods by

21   which to do so.  (*Id.* at p. 4 of 4.)  The SHO assessed 360 days forfeiture of behavioral (good time)

22   credits against White.  (*Id.* at p. 1 of 4.)

23   **III.    DISCUSSION**

24       **A.    Scope of Review**

25       Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

26   habeas corpus claims:

27       The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
         entertain an application for a writ of habeas corpus in behalf of a person in custody
28       pursuant to the judgment of a State court only on the ground that he is in custody in
         violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2008) (emphasis added).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2008) (emphasis added).

"[The Antiterrorism and Effective Death Penalty Act ("AEDPA")] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  *Womack v. Del Papa*, 497 F. 3d 998, 1001 (9th Cir. 2007), quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).  To obtain federal habeas relief, White must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).  The "objectively unreasonable" standard is not met by a showing of error or of an incorrect application (as opposed to an objectively unreasonable application) of the governing federal law.  *Andrade,* 538 U.S. at 75; *Woodford,* 537 U.S. at 25; *Bell v. Cone,* 535 U.S. 685, 694, 699 (2002) ("it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied [the Supreme Court precedent] incorrectly").  As the U.S. Supreme Court explained, this standard is different from the "clear error" standard in that "[t]he gloss of clear error fails to give proper deference to state court by conflating error (even clear error) without unreasonableness." *Andrade,* 538 U.S. at 75.

1    Where there is no reasoned decision from the state's highest court, this Court "looks through"

2    to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  A state

3    court need not cite U.S. Supreme Court precedent when resolving a habeas corpus claim.  *Early v.*

4    *Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court

5    decision contradicts [U.S. Supreme Court precedent,]" *id.*, the state court decision will not be "contrary

6    to" clearly established federal law.  *Id.*

7        In White's case, the California Supreme Court, as well as the appellate court, denied his habeas

8    petition without furnishing a basis for its reasoning.  (Answer, Exs. 5 & 7.)  Accordingly, this Court

9    "looks through" to the reasoning provided by the Monterey County Superior Court in denying White's

10   habeas petition filed there.  That court stated:

11       [¶] Petitioner contends he was found guilty of possessing an inmate manufacture[d]
         weapon based on false testimony from his cellmate. . . .

12
         [¶] Disciplinary Committee decisions are subject to the "some evidence" standard of
13       review.  Under this standard, the Court must affirm the Committee's findings so long
         as they are supported by "some evidence" in the record.  *In re Powell* (1988) 45 Cal.3d
14       894, 904.  Petitioner contends he was set-up by prison officials working in connection
         with his cellmate, and that he was refused the ability to take a lie detector test at his
15       own expense to prove his innocence.  However, the record indicates that a weapon was
         found in Petitioner's cell and that his cellmate claimed the weapon belonged to
16       Petitioner.  This Court may not weigh the credibility of that evidence, and the
         committee's finding must be affirmed.
17

18   (Answer, Ex. 3 at p. 1.)

19       **B.**   **Analysis**

20       White claims he was denied due process of law when: (1) prison staff failed to determine the

21   reliability and truthfulness of a confidential informant, (2) he was denied the right to call witnesses or

22   an investigative employee at his disciplinary hearing, and (3) prison officials failed to allow him to raise

23   facts on appeal through the inmate appeals process.  (*See* Answer, Ex. 6 at petition to California Court

24   of Appeal, Grounds One through Three, pp. 3-4 & attached page.)  An inmate who faces the loss of

25   a state-created liberty interest such as behavioral (good time) credits is entitled to "those minimum

26   procedures appropriate under the Due Process Clause to insure that the state created right is not

27   arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  Where inmates have a statutory

28   right to good time credits, the loss of such credits affects a protected liberty interest by "extending the

1   length of imprisonment." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).[5]  Due process requires that

2   an inmate facing loss of credits receive: (1) written notice of the charges against him at least twenty-

3   four hours before any disciplinary action is taken; (2) a written statement setting forth the basis for the

4   disciplinary action taken against the prisoner; and (3) the opportunity to call witnesses as long as it

5   would not be "unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 563-

6   67.

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . .  *United States ex rel Vajtauer v. Commissioner of Immigration*, 273 U.S. [103] at 106 [1927].  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, **the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board**.

12  *Hill*, 472 U.S. at 455-56 (emphasis supplied).

13      White received the "minimum procedures appropriate under the Due Process Clause" to insure

14  that the state did not arbitrarily deprive him of good time credits.  The record reflects clearly that he

15  received copies of the RVR (citing the charge against him) and the Crime Incident Report on August

16  1, 2004, three weeks prior to the disciplinary hearing.  (Answer, Ex. 2 at RVR p. 1 of 4.)  White

17  received a copy of the expanded RVR (setting forth the basis for the finding of guilt) after the

18  disciplinary hearing (*id.*), and that he had the opportunity to call witnesses, but declined to exercise that

19  right at the time of the hearing.  (*Id.* at p. 3 of 4 ("Pursuant to CCR § 3315(e), Inmate White did not

20  request any witness(es) to be present at the hearing.").)

21      In Ground One, White challenges the reliability and truthfulness of the confidential informant

22  and contends that he "was set up for a crime [of] which he is completely innocent."  (Answer, Ex. 6

23  at petition to California Court of Appeal, p. 3 and attached pages.)  Respondent contends that the state

24  _____

25  [5]It is unclear from the record before the Court whether White had a due process-protected liberty interest in residing in the general prison population versus placement in the SHU.  *See Serrano*

26  *v. Francis*, 345 F.3d 1071, 1078 (2003) (finding that where petitioner's disability, coupled with administrative segregation in a SHU not designed for disabled persons, gave rise to a protected liberty

27  interest, the court stated that "[t]ypically, administrative segregation in and of itself does not implicate a protected liberty interest").  Because White was assessed a 360-day forfeiture of good time credits

28  in addition to being placed in the SHU, however, due process requires that he be afforded the protections set out in *Wolff*.

07cv0749

1  court's decision denying White's habeas claim should be upheld because the SHO's decision finding

2  White guilty of the rules violation was supported by some evidence in the record.  (Answer at 5-6.)

3  Respondent is correct.

4      There was plainly "some evidence" to support the rules violation, and "some evidence" is all

5  that is required under the Due Process Clause.  As fully set forth in Section II above, the SHO based

6  his guilty finding on the following evidence: the RVR setting forth that confidential information led CO

7  Nunez to discovery two inmate- manufactured weapons in White's cell; the information contained in

8  the Confidential Memorandum indicating that White was positively identified by a reliable source as

9  having inmate-manufactured weapons hidden in his assigned cell, and the information contained in the

10  investigative employee's report prepared by CO Monroy indicating (among other things) that White's

11  cell mate, Inmate Snow, stated that White brought the inmate-manufactured weapons into the cell on

12  July 21 when White returned from his work assignment.  (Answer, Ex. 2 at RVR & Serious Rules

13  Violation Report.)  Additionally, the SHO made specific findings that the confidential information who

14  led to the discovery of the weapons was credible.  (Answer, Ex. 2 at RVR p. 3 of 4.)

15      In light of the above, this Court finds Ground One of the Petition meritless.  Despite White's

16  contention that "[t]he evidence relied upon at the RVR hearing, based exclusively on confidential

17  information, conflicted" (Traverse at 6), this Court is bound by a standard that requires only "some

18  evidence" to uphold the administrative decision.  *Hill*, 472 U.S. at 455.  Even evidence that may seem

19  meager will satisfy this standard because a prisoner's liberty interest "must be accommodated in the

20  distinctive setting of a prison, where disciplinary proceedings 'take place in a closed , tightly controlled

21  environment peopled by those who have chosen to violate the criminal law and who have been lawfully

22  incarcerated for doing so.'"  *Id.* at 457, 454, citing *Wolff*, 418 U.S. at 561.  The state court's denial of

23  this claim was neither contrary to, nor an unreasonable application of clearly established law.  *See* 28

24  U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.  Accordingly, Ground One is **DENIED**.

25      In Ground Two, White asserts that he was denied the right to call witnesses or an investigative

26  employee at his disciplinary hearing.  (*See* Answer, Ex. 6 at petition to California Court of Appeal, p.

27  4 and attached pages.)  Specifically, White contends that he requested that Investigative Employee CO

28  Monroy (who conducted a fact-finding investigation and prepared the Serious Rules Violation Report)

1    and White's cell mate, Inmate Snow, be present for questioning at the disciplinary hearing, but that his

2    request was unreasonably denied in violation of his right to due process. (*Id.*)[6] White alleges:

3    "[a]lthough the finalized copy of the RVR was doctored by the SHO to reflect that petitioner did not

4    call any witnesses, this was simply not the case as petitioner sought that Snow be called or made

5    available via telephone had security been a concern. This was not honored nor documented by the

6    SHO." (Traverse at 8.) Respondent contends that the RVR and Serious Rules Violation Report

7    accurately reflect that White requested no witnesses for the disciplinary hearing. (Answer at 6-7.)

8    Even if he had requested witnesses, and even had that request been denied, Respondent argues, White

9    can show no prejudice from that denial to justify federal habeas relief. (*Id.*)

10      The RVR, which in part recorded the proceedings of the disciplinary hearing, unambiguously

11    states that "White did not request any witness(es) to be present . . . ." (Answer, Ex. 2 at RVR p. 3 of

12    4.) White provides no evidence to support his assertion that the SHO denied his request for witnesses

13    and then "doctored" the RVR to reflect the lie. He provides no possible motive to explain the SHO

14    doing so. Moreover, the portion of the RVR pertaining to witnesses appears not to have been altered

15    (e.g., the type font and ink darkness are the same as the rest of the page's text). Without more, White's

16    assertion amounts to a conclusory allegation that must be rejected by the Court. *James v. Borg*, 24

17    F.3d 20, 26 (9th Cir.), *cert. denied*, 513 U.S. 935 (1994) (conclusory allegations that are not supported

18    by specific facts do not merit habeas relief).

19      Even *if* the SHO improperly denied White's request that CO Monroy and his cell mate Inmate

20    Snow appear as witnesses at the disciplinary hearing, White has not shown that the denial of witnesses

21    resulted in prejudicial error so as to justify federal habeas relief. *See Brecht v. Abrahamson*, 507 U.S.

22    619, 637 (1993) (". . . [H]abeas petitioners may obtain plenary review of their constitutional claims,

23    but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in

24    'actual prejudice.'") White does not allege what difference the hearing testimony of Monroy or Snow

25    would have made in the outcome of the hearing. There is no indication from the record that CO

26

27

28         [6]White appears to assume that his cell mate, Inmate Snow, provided the confidential information that led to the discovery of the weapons. While this it certainly a plausible assumption, the record does not appear to indicate that this was, in fact, the case.

1  Monroy or Inmate Snow would have testified in any way differently than indicated in their findings and

2  statements set forth in the RVR and Serious Rules Violation Report, which were considered by the

3  SHO.  Without more, White cannot meet his burden, and Ground Two is meritless.  The state court's

4  denial of this claim was neither contrary to, nor an unreasonable application of clearly established law.

5  *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.  Accordingly, Ground Two is **DENIED**.

6        In Ground Three, White contends that prison officials violated his right to due process when

7  they failed to allow him to raise facts on appeal through the inmate appeals process.  (*See* Answer, Ex.

8  6 at petition to California Court of Appeal, attached pages.)  Specifically, White contends that his rights

9  pursuant to California Penal Code § 2932(d) were violated.

10        If found guilty [of a charge resulting in denial of good time credits,] the prisoner shall
        be advised in writing of the guilty finding and the specific evidence relied upon to reach

11        this conclusion and the amount of time-credit loss.  The prisoner may appeal the
        decision through the Department of Corrections' review procedure ... .

12

13  West's Ann.Cal.Penal Code § 2932(d)(2008).

14        The RVR reflects that White was specifically advised of his appeal rights after he was found

15  guilty of the charge of possession of inmate-manufactured weapons, which advise included "the

16  methods of appealing."  (Answer, Ex. 2 at RVR p. 4 of 4.)  On April 14, 2005,  the prison Appeals

17  Coordinator sent a notice to White indicating that his appeal regarding the RVR was received on

18  October 12, 2004 and was "subsequently screened out due to missing documentation."  (Answer, Ex.

19  6 at petition to California Court of Appeal, Ex. G.)  On July 7, 2005, the prison Appeals Coordinator

20  sent a notice to White indicating that his appeal (which appears to have been re-submitted on or about

21  May 17, 2005) was submitted late, without explanation, in violation of the time requirements of 15

22  California Code of Regulations (Cal. Admin. Code) § 3084.6(c) ("An appellant must submit the appeal

23  within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower

24  level appeal decision.").  (*Id.* at Ex. I.)

25        There is no U.S. Supreme Court law mandating specific appeals procedures regarding decisions

26  resulting from state prison disciplinary hearings.  Accordingly, White cannot show that the state court's

27  denial of his habeas petition concerning Ground Three was contrary to such law.  *See* 28 U.S.C. §

28  2254(d).  Moreover, there is no indication in the record before the Court that any error was made.  It

appears that White initially submitted an incomplete appeal and then re-submitted a late appeal. (*See* Answer, Ex. 6 at petition to California Court of Appeal, Exs. G & I.) There is nothing in the record, and White makes no showing, to indicate that White's efforts to appeal the disciplinary decision were thwarted by prison officials. Even *if* the prison Appeals Coordinator incorrectly rejected White's original appeal or incorrectly rejected White's re-submission of the appeal, White has not shown that he was prejudiced by the error so as to justify federal habeas relief. As discussed above, the guilty finding was supported by "some evidence" in the record, and White was afforded the federal due process protections required in the context of a prison rules violation proceeding. *Wolff*, 418 U.S. at 563-67; *Hill*, 472 U.S. at 454. The state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Ground Three is **DENIED**.

## V.    CONCLUSION

For all the foregoing reasons, the Petition is **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED:  February 3, 2009

**WILLIAM Q. HAYES**
United States District Judge

07cv0749